## The Oscar Barnett Foundry Company

*v.*

## Paul L. Crowe.

[Decided July 13th, 1910.]

1. When a defendant sets himself up as an inventor, and for a valuable consideration induces another party to take a license under his so-called invention, or to buy his patents, it does not lie in his mouth to say that the patent is bad, or that the application is for a thing for which letters patent are not allowable, or, in other words, having represented that he has a patentable invention on which he based the contract which furnished him with money, it does not lie in his mouth to say that the so-called invention is not a patentable thing; and when he gives another man the exclusive right to use the thing which he says is patentable, he has no right whatever to enter into the manufacture of that very same article in competition with the man with whom he has made such a contract, upon a good consideration.

2. An agreement in writing made between the complainant and the defendant, after reciting that the defendant had patentable inventions, for a valuable consideration expressed in the contract, gave to the complainant the exclusive right to use those patentable inventions in the manufacture of mechanical chain grate stokers. In a suit by the complainant as licensee against the defendant as licensor to restrain him from infringement—*Held*, (1) that the validity of the patent or patents is not involved; and (2) that it does not lie in the defendant's mouth to say that they were not patentable, nor to say that the agreement did not mean to include applications which had been filed at the time the agreement was made but on which no patents had yet been issued; and the defendant's action in building a mechanical chain grate stoker for another party was a gross violation of his contract, and is a subject-matter over which this court has jurisdiction.

3. The court will retain jurisdiction over the cause of action in this suit, but decline to issue an injunction to prevent the defendant from violating the covenants made by him in the agreement, for the reason that it does not appear but that the infringing machine was finished and set up and sold and ready for operation at the time the bill was filed.

4. Upon amendment of the bill an accounting may be had for the profits made by the defendant in the construction of the infringing machine.

---

On final hearing on bill, answer, replication and proofs.

Mr. *Egbert J. Tamblyn,* for the complainant.

Mr. *Boyd McLean,* for the defendant.

HOWELL, V. C. (orally).

I do not care to hear you any further, Mr. Tamblyn.

This case, as I have repeatedly said during its progress through the court, is not a case in which the validity of a patent or patents is involved. If it were, the court would be without jurisdiction; but it is a case in which the rights of the parties are governed by a contract which was entered into between them on the 29th day of January, 1908. This court may, however, look into the letters patent hereinafter mentioned far enough to identify the subject-matter of the litigation. At that time, and before, the defendant, Paul L. Crowe, claimed to be the inventor and owner of certain improvements in mechanical stokers for the smokeless burning of bituminous and anthracite coal for use in connection with steam boilers and other furnaces; the contract with the complainant is with relation thereto. That contract recites that he, Crowe, is the inventor and owner of certain improvements in mechanical stokers for smokeless burning of bituminous and anthracite coal for use in connection with boilers and other furnaces; and that the party of the first part, that is, the complainant, was desirous of manufacturing stokers containing said improvements. With that recital the contract proceeds to give to the complainant the sole and absolute license to manufacture and sell chain grate mechanical stokers under protection guaranteed and to be guaranteed by the United States patent office to the party of the first part on two patents which appear to have been pending, and a third which was in contemplation. A royalty was provided for the use of the invention and the license was an exclusive one for the State of New Jersey and for some other states. There was also in the agreement a license to the complainant to manufacture and sell a grate bar in accordance with letters patent which had been issued to the defendant by the patent office, and made also in accordance with claims in the former-mentioned applications for patents; and also in all applications thereafter made by the party of the first part, for im-

provements thereon, and that is repeated in another paragraph of the agreement. Now, I construe that agreement, taken altogether, to give to the Barnett company, the complainant, the right to manufacture mechanical chain grate stokers in accordance with the letters patent and the improvements which might thereafter be made by the defendant on the appliances described in those letters patent, and that the complainant had the exclusive right so far as the State of New Jersey was concerned. But you need not go further than this for the purpose of this case; the complainant has the right to manufacture chain grate stokers in accordance with those inventions which are claimed to have been made by the complainant.

Now, I do not care whether patents were granted on all these applications or not; I don't think it makes any difference. I think when Mr. Crowe sets himself up as an inventor, and for a valuable consideration induces another party to take a license under his so-called invention, or to buy his patents, it does not lie in his mouth to say that the patent is bad, or that the application is for a thing for which letters patent are not allowable, or, in other words, having represented that he has a patentable invention on which he based the contract which furnished him with money, it does not lie in his mouth to say that the so-called invention is not a patentable thing; and when he gives another man the exclusive right to use the thing which he says is patentable, he has no right whatever to enter into the manufacture of that very same article in competition with the man with whom he has made such a contract, upon a good consideration. Now, that, I think, is the long and short of this case.

Mr. Crowe represented to the complainants that he had patentable inventions, and for a valuable consideration, which is expressed in the contract, he gave to the complainant the exclusive right to use those patentable inventions in the manufacture of mechanical chain grate stokers. Now, I do not think it lies in his mouth to say they were not patentable; neither do I think it lies in his mouth to say that the agreement did not mean to include applications which had been filed at the time the agreement was made, but on which no patents had yet been issued, because he does make an attempt to get out of the results of his actions by

attempting to show that the inventions which he used in the mechanical chain grate stoker which he erected in Jersey City were covered by applications for letters patent which had been made before the signing of the contract with the Barnett company and which were not by special words therein included. Now, I think, they were included; I think that he meant to license the Barnett company, and I think the Barnett company meant to get a license from him to use all the patents and all the inventions and all the improvements that are mentioned in this contract anywhere. Now, if that is so, then the action of Mr. Crowe in building a mechanical chain grate stoker for the Commercial Trust Company in Jersey City was a gross violation of his contract, and it is a subject-matter over which the court of chancery has jurisdiction.

I have no doubt about what the result ought to be. At the time the bill was filed an application was made for an injunction to prevent the use by the defendant of these inventions. An injunction was granted, but that was on the ground that it did not clearly appear at the time, what is still somewhat doubtful, but perhaps appears a little better than it did then, viz., that the stoker was not finished at the time of the filing of the bill. The bill was filed on the 31st day of August, 1909. It is now claimed on the part of the defendant it was finished at that time, and that the injunction which was prayed for therefore cannot now go, for the reason that it would not be of any benefit or advantage to the complainant. That, however, does not interfere with the jurisdiction of the court over the cause of action. The court has jurisdiction over the cause of action; it has jurisdiction to prevent the defendant from violating the covenants made by him in this agreement; it undoubtedly has that jurisdiction; but in this case should the injunction issue? I think, Mr. Tamblyn, that it is not entirely clear that your bill was filed before the work was finished in Jersey City. Of course, I know what your view of it is and what the view of the other side is, but the matter rests in my mind in very grave doubt. I do not think there is any testimony that can be absolutely relied upon that will go to show either the one thing or the other, in which event I do not see how I can grant an injunction, although I hold to the jurisdiction of the

court over the cause of action. I think I am prevented from granting an injunction in accordance with my views of the merits of the controversy, by reason of the rule that an injunction cannot issue in a case where it can be of no use. If the machinery was done, finished, delivered, set up and ready to operate at the time you filed your bill, then your injunction comes too late, and I hold that in this case; I retain the jurisdiction of the court over the cause of action, but decline to issue an injunction for the reason that it does not appear but that the machine was finished and set up and sold and ready for operation at the time the bill was filed. Now, Mr. Tamblyn, that leaves the complainant practically without remedy in this cause unless it can have an accounting against the defendant for the profits made by him in the construction of this machine. You have not prayed for an accounting, and the question is whether you may have an accounting which you ask for now orally, without an amendment to the bill. I do not think you can. I think if you want to compel Mr. Crowe to account for the profits made by him you will have to make application to the court for leave to amend the prayer of your bill, and perhaps the stating part of the bill also to some extent, in order to lay a foundation for an accounting. I see no reason why an accounting should not be had in this case as was had by the complainant in the case of *Clark Thread Co.* v. *The William Clark Co., 55 N. J. Eq. (10 Dick.) 658,* and in the case of *Vulcan Detinning Co.* v. *American Can Co., 75 N. J. Eq. (5 Buch.) 542.* They seem to me to be cases involving the same principle exactly.

Now, I think that decides all the questions that have arisen in this case; you may take time to consider, Mr. Tamblyn, whether you desire to amend or not.